# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 14, 2008

Charles R. Fulbruge III
Clerk

No. 06-10779
Summary Calendar

TIMOTHY GREY

Plaintiff - Appellant

V.

DALLAS INDEPENDENT SCHOOL DISTRICT; MANUAL VASQUEZ;
CEDRIC PORTLEY; DAN CLAXTON; GARY HODGES; LUIZ TAMEZ

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:04-CV-1164

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Timothy Grey was terminated from his employment as a security officer for the Dallas Independent School District ("DISD").  He sued the DISD and DISD supervisors Manual Vasquez, Cedric Portley, Dan Claxton, Gary Hodges and Luiz Tamez ("the Defendants") under Title VII and 42 U.S.C. § 1983. The

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court granted summary judgment in favor of the Defendants and we affirm.

## I. FACTS AND PROCEEDINGS

Grey was hired by DISD as a School Resource Police Officer in 2001. At all relevant times, Vasquez was Chief of DISD Department of Police and Security Services and Portley, Claxton and Hodges were Grey's supervisors. Tamez was DISD's Coordinator of Employee Hearings and Grievances. In January 2002, Portley discovered that Grey's driver's license had been suspended and assigned him to the dispatch office until the license situation was resolved. While this order was in place, Grey rode on patrol with other officers for several shifts. When Portley and Claxton confronted Grey about disobeying their direct order, Grey responded by stating "you want to talk, we can talk to my attorney."[1]

On February 14, 2002, Portley and Claxton met with Grey to notify him that he was under investigation for insubordination for this and other incidents. On February 15, 2002, Grey filed a grievance against Vasquez, Portley and Claxton in which he claimed retaliation, hostile work environment and "despair treatment" for his "free speech" in requesting an attorney. In his first grievance, Grey stated that "Chief Vasquez has a history of practicing retaliatory conduct towards officers who opposed him or speak up for themselves. Vasquez also have [sic] been proven guilty for retaliation by the EEOC." Apart from the reference to the Equal Employment Opportunity Commission ("EEOC"), nothing in Grey's four page handwritten grievance related to Title VII-type discrimination. Tamez, the DISD administrator with whom the first grievance was filed, did not take any action to investigate the grievance or schedule a hearing. Grey contacted Tamez on March 19, 2002 to find out the status of his first grievance and Tamez told him to take it up with his immediate supervisor, which was in violation of

---

[1] Grey states that he obtained permission from Vasquez to ride with other officers instead of staying in the dispatch office.

a DISD policy requiring any administrator who received a grievance in error to forward it to the proper administrator and notify the grievant. In August 2002, after Grey had been terminated, Tamez discovered that the first grievance had not been resolved and he scheduled a hearing for Grey before Vasquez. Vasquez denied Grey's grievance on August 29, 2002.

On March 7, 2002, Portley, Claxton and Hodges recommended to Vasquez that Grey be terminated based on his insubordination prior to and during the course of their February 2002 investigation. On April 30, 2002, Vasquez notified Grey in writing that he was recommending termination for reasons which included excessive absences and "[a]cts of insubordination and unprofessional remarks directed towards supervisors." Grey requested and received a hearing before a three-person judicial panel. The hearing took place on August 6-7, 2002. Grey was represented by counsel and presented witnesses and evidence. The judicial panel affirmed Grey's termination in a written order dated August 14, 2002.

Grey filed a charge of discrimination with the EEOC on January 22, 2004. The EEOC determined that "the evidence obtained during the investigation does not establish a violation of [Title VII]."

Grey, initially proceeding pro se, filed suit in district court on May 28, 2004. The Defendants filed motions to dismiss and motions for judgment on the pleadings, to which Grey filed responses. On April 4, 2005, five months before the discovery deadline, Grey served interrogatories and requests for production on the Defendants. The DISD complied with his discovery request by producing over 800 pages of business records under Rule 33(d) of the Federal Rules of Civil Procedure. On May 10, 2005, Grey wrote a letter to the court asserting that the discovery provided by the DISD was inadequate and that DISD was not willing to cooperate with him. On August 25, 2005, less than five working days before the discovery deadline, Grey's attorney entered a formal appearance for the first

time and noticed the depositions of Vasquez and other DISD personnel. The Defendants filed motions for protective orders and motions to quash his depositions, citing that the discovery deadline was August 31, 2005. On August 31, 2005, Grey filed a motion to compel discovery.

On September 30, 2005, Vasquez filed a motion for summary judgment. On October 27, 2005, DISD filed a motion for summary judgment. Grey never filed a response. On December 30, 2005, the district court granted summary judgment in favor of the Defendants. On the same day, the district court denied as moot Vasquez's motion to dismiss, DISD's motion for judgment on the pleadings, and the Defendants' motions to compel discovery. The district court granted the Defendants' motions for protective orders and motions to quash arising out of the August 2005 discovery dispute. The district court denied Grey's August 31, 2005 motion to compel discovery and found that "the Defendants' responses to Grey's discovery requests have been reasonable and complete."

On January 17, 2006, Grey filed a Rule 59(e) motion to vacate the judgment and attached additional evidence, including affidavits from several of Grey's co-workers. Vasquez filed a motion to strike the additional evidence. On June 14, 2006, the district court denied Grey's motion to vacate on the ground that the evidence he submitted "d[id] not qualify as newly discovered" and denied Vasquez's motion as moot.

Grey now appeals the grant of summary judgment, the denial of his motion to vacate, the denial of his motions to compel and the grant of the Defendants' motions for protective orders.

## II. STANDARDS OF REVIEW

This Court reviews a grant of summary judgment de novo and applies the same criteria as the district court. Fed. Deposit Ins. Corp. v. Laguarta, 939 F.2d 1231, 1236 (5th Cir. 1991). As this Court noted in Little v. Liquid Air Corp.:

[T]he party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. . . . We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations and quotations omitted).

The district court did not consider the materials Grey submitted with his Rule 59(e) motion, so we review the court's order for an abuse of discretion. Ford Motor Credit Co. v. Bright, 34 F.3d 322, 324 (5th Cir. 1994).

The district court's discovery rulings are reviewed for abuse of discretion. Turnage v. Gen. Elec. Co., 953 F.2d 206, 208 (5th Cir. 1992).

## III. DISCUSSION

Grey, who is black, alleges that he was discriminated against on the basis of race within the meaning of Title VII, and that the district court's refusal to rule on his motion to compel discovery rendered him unable to prove that he was treated differently from similarly situated employees of other races. Grey alleges that he was retaliated against on the basis of his request for an attorney and his two grievances, and that this violated Title VII's anti-retaliation provisions. Grey argues that his termination violated his liberty interest in his reputation and his property interest in his continued employment with DISD.

Grey did not file a response to the Defendants' motions for summary judgment. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Nor is it our duty to do so on appeal." Stults v. Conoco, Inc., 76 F.3d

651, 657 (5th Cir. 1996) (internal citations and quotations omitted). Because Grey did not carry his burden to "designate specific facts showing that there is a genuine issue for trial," summary judgment was appropriate. Id. (internal quotations omitted).

## A. Title VII Discrimination

To prevail on his Title VII discrimination claim, Grey must establish a prima facie case of discrimination. Tex. Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To establish his prima facie case, Grey must show that he is a "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005). Once Grey as the plaintiff establishes his prima facie case,

> the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for the employee's rejection. . . . [S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Burdine, 450 U.S. at 253 (internal citations and quotations omitted).

The Defendants admit that Grey meets the first three elements of the prima facie case for discrimination, but they argue that he has not established the fourth element. They also argue that Grey's insubordination and habitual absences created a legitimate, nondiscriminatory reason for his termination. The district court found that Grey failed to establish a prima facie case of discrimination because he did not establish that he was treated differently from similarly situated employees of other races. The district court also noted that Grey did not attempt to show that the Defendants' legitimate nondiscriminatory reasons for their actions were pretextual. On appeal, Grey admits that he had submitted no summary judgment evidence comparing himself to similarly situated non-blacks. Because Grey failed to establish a prima facie case of race

discrimination, we affirm summary judgment as to Grey's Title VII discrimination claim. Id.

B.    Title VII Retaliation

To establish a claim for Title VII retaliation, Grey "must make a prima facie showing: (1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (internal quotations omitted). On appeal, Grey claims that he was retaliated against for telling Portley and Claxton that they should speak to his attorney, filing the February 15, 2002 grievance to protest the insubordination investigation, and filing the May 2, 2002 grievance to protest being recommended for termination. The district court found that Grey failed to establish a prima facie case of Title VII retaliation because he did not demonstrate that he engaged in protected activity. Upon review of the record, we affirm.

"Title VII does not require that a plaintiff prove that the conduct opposed was actually in violation of Title VII, but only that a charge was made, or that participation in an investigation of a violation of Title VII occurred." Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002) abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2412–13 (2006)). Here, Grey failed to prove that he engaged in activities protected under Title VII. Grey's first allegedly protected activity consisted of his statement to his superior officers, "you want to talk, we can talk to my attorney." Grey's second allegedly protected activity, his February 15, 2002 grievance, similarly did not refer to race, but claimed retaliation for "free speech." Grey's May 2, 2002 grievance stated that he was being terminated "strictly in retaliation in which Chief Manny Vasquez has taken out against me because of the grievance I filed for making such retaliatory comments and act of displaying

discriminatory practices." In other words, Grey alleged in his second grievance that he was being retaliated against for filing the first grievance. Like the first grievance, the second grievance did not mention race. Both of Grey's formal grievances related to the same initial incident with his superiors, in which there was no mention of race nor any allegation of discrimination. The district court correctly concluded that Grey's retaliation claim failed because he did not show that he opposed activities protected under Title VII. See Banks, 320 F.3d at 575.

C.    § 1983 Liberty Interest

Grey asserts that his termination violated his Fourteenth Amendment due process rights because he was a public employee "terminated for reasons that were false, publicized and stigmatizing." The district court rejected this claim and held that Grey "did not have a protected liberty interest in his reputation and good name as a matter of law." We affirm. This Court has stated that "mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." Finch v. Fort Bend Indep. Sch. Dist., 333 F.3d 555, 561 n.3 (5th Cir. 2003) (rejecting a former school principal's claim of a liberty interest in her good name). The district court correctly rejected Grey's § 1983 liberty claim.

D.    § 1983 Property Interest

Grey asserts that he has a protected property interest in his continued employment with DISD and that he was deprived of this interest without due process of law. The district court rejected this claim because Grey failed to demonstrate that he had a protected property interest in his employment. We affirm. Texas is an at-will employment state, and therefore Grey bears the burden of proving the existence of a contract establishing a property interest in his continued employment. Schultea v. Wood, 27 F.3d 1112, 1116 (5th Cir. 1994), reh'g en banc granted, 47 F.3d 1427 (1995). Grey did not point to any contract which altered his employment at-will status. The Defendants submitted affidavits and DISD policies showing that as support staff, Grey did not have a

written contract and was an at-will employee. We find that Grey lacked a protected property interest in his DISD employment and we affirm the district court's grant of summary judgment on Grey's § 1983 property interest claim.

E.    Discovery Motions

Grey appeals the district court's discovery rulings. He alleges that the district court abused its discretion by not granting his motions to compel and by quashing his depositions of the Defendants on the same day that it granted summary judgment against him. We find that the district court did not abuse its discretion and we affirm.

With regard to his motion to compel, Grey notes that DISD released hundreds of pages of information from its grievance files but "refused to identify the participants by race." Grey states that without this information, he was unable to establish his Title VII claim of race discrimination. This argument is without merit for a number of reasons, including the fact that Grey could have relied on other evidence (including, for example, co-worker affidavits) to establish a genuine issue of material fact regarding DISD's disparate treatment of black security officers. Instead, Grey chose not to respond to the Defendants' motion for summary judgment. He now bears the consequences of that decision.

In ruling on Grey's motion to compel, the district court found that the DISD's discovery responses were "reasonable and complete." If Grey required further discovery in order to respond to the Defendants' motions for summary judgment, he should have requested a continuance under Rule 56(f). See Washington v. Allstate Ins. Co., 901 F.2d 1281, 1285 (5th Cir. 1990). Grey neither filed such a motion nor a response to summary judgment showing why he was entitled to trial.

Even if we accept Grey's contention that additional discovery would have enabled him to prove his Title VII race discrimination claim, we are not required to find that the district court abused its discretion by denying his motion to

compel discovery, because it was filed on the day of the discovery deadline after an extensive discovery period. Turnage v. Gen. Elec. Co., 953 F.2d 206, 209 (5th Cir. 1992) (holding that the district court did not abuse its discretion when it denied plaintiff's request to conduct potentially dispositive discovery, "given (i) the imminence of trial, (ii) the impending discovery deadline, and (iii) [plaintiff's] failure to request an inspection earlier"). The district court did not abuse its discretion when it denied Grey's motion to compel.

Grey also challenges the district court's decision to grant the Defendants' motions to quash and motions for protective orders. His claims are without merit. Granting protective orders because of impending discovery deadlines is not an abuse of discretion. Id. Grey noticed the August 29-30, 2005 deposition of two DISD employees on August 26, 2005. The discovery deadline set by the district court was August 31, 2005. The district court did not abuse its discretion when it granted the Defendants' discovery motions.

F.    Motion to Vacate

Following the entry of summary judgment, Grey filed a Rule 59(e) motion to vacate. The district court denied the motion. Rule 59(e) motions to vacate or amend a judgment "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990) (internal quotations omitted). The district court correctly stated that the additional evidence Grey appended to his motion to vacate (principally affidavits from Grey's former co-workers) was fully available to Grey at the time of summary judgment. The district court did not abuse its discretion when it denied Grey's motion to vacate, and we affirm.

IV. CONCLUSION

The opinion and order of the district court granting summary judgment is AFFIRMED.